```
 1  DAVID A. ELDEN (CA SBN 46684)
    Attorney at Law
 2  11377 West Olympic Boulevard, Tenth Floor
    Los Angeles, California 90064
 3  Telephone (310) 478-3100
    Facsimile (310) 478-2200
 4  Email: elden@innocent.com

 5  Attorney for Defendant
    GABRIEL DIEBLAS ROMAN
```

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 07 CR 470-01 (DLC) |
| Plaintiff, | ) | **DEFENDANT'S SENTENCING MEMORANDUM, WITH EXHIBITS** |
| v. | ) | Date: February 15, 2008 |
| GABRIEL DIEBLAS ROMAN, | ) | Court: Hon. Denise L. Cote |
| Defendant. | ) | |

Defendant GABRIEL DIEBLAS ROMAN, through counsel, hereby submits his Sentencing Memorandum, with Exhibits.

Defendant, through counsel, requests the opportunity to make additional comments relevant to his position at the time of sentencing.

Date: February 13, 2008                    Respectfully submitted,

                                            _____/s/_____
                                            DAVID A. ELDEN
                                            Attorney for Defendant
                                            GABRIEL DIEBLAS ROMAN

1

**I.**

**OVERVIEW**

On November 6, 2007, Defendant Gabriel Dieblas Roman pled guilty to one count of conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(A).

The case at bar requires a ten-year mandatory minimum prison term. The Presentence Report (PSR) prepared by the United States Probation Office calculates a total offense level of 35, Criminal History Category I, which correlates to an advisory sentencing range with a low end of 168 months. The Defendant and the Government had earlier agreed to stipulated advisory guidelines of Level 35 (see Plea Agreement). In the Plea Agreement, however, the parties also agreed that "either party may seek a sentence outside of the Stipulated Guidelines Range; suggest that the Probation Department consider a sentence outside of the Stipulated Guidelines Range; and suggest that the Court *sua sponte* consider a sentence outside of the Stipulated Guidelines Range, based upon the factors to be considered in 18 U.S.C. §3553(a)." In the PSR, the USPO recommends the low-end guideline term of 168 months.[1] Mr. Roman concurs with the PSR in all respects with respect to *guideline calculations*, but believes that mitigating circumstances exist that militate for a non-guideline sentence of no more than the mandatory minimum of ten years.

Based on the United States Supreme Court's decision in <u>United States v. Booker</u>, 125 S. Ct.738 (2005), the Sentencing Court, in

---

[1] PSR, Pg.5 ¶7(1), PSR, Pg. 19.

2

1 addition to considering the Guidelines [18 U.S.C. §3553(a)(4)&(5)],
2 must also consider the other directives set forth in §3553(a).
3 Thus, under <u>Booker</u>, courts are instructed to regard the Guidelines
4 as just one of a number of considerations to be evaluated and
5 weighed.  Although the Court must still consider them, they are no
6 longer binding.  The Court is also meant to consider the various
7 sentencing factors set forth in 18 U.S.C. §3553(a) which include,
8 among other criteria, the fact that the sentence should be
9 *sufficient, but not greater than necessary* to comply with the
10 purposes set forth in paragraph (2) of this subsection" [emphasis
11 added], and that the court should consider the "nature and
12 circumstances of the offense" and the "history and characteristics
13 of the defendant."  The guiding factor to be considered in
14 formulating an appropriate sentence is that the sentence imposed be
15 reasonable.
16    Mr. Roman is 46 years old.  He is the father of six children.
17 He also raised five stepchildren.  Since coming to the United
18 States in 1981, he has worked on an assembly line in a Compton,
19 California furniture factory; as a big rig truck driver and
20 owner/operator; and as an independent auto salesman.  He has never
21 made more than a modest living, but by all accounts he has been a
22 loving and supportive father and family man who tried to help his
23 extended family.  Apart from the instant matter, Gabriel Roman has
24 no prior criminal convictions.
25    Now, as a result of the highly regrettable mistakes that he
26 made, Mr. Roman has been in custody already for almost a year.
27 Upon satisfaction of whatever custodial term may be imposed, he
28 faces certain deportation and banishment from the United States.

3

1    The Defendant agrees that the Probation Office has correctly
2 tabulated the guidelines, and that a 14-year sentence might be
3 appropriate if we were still living in the era of mandatory,
4 impregnable guideline sentences.  We are not, however, as the
5 United States Supreme Court has repeatedly made clear in a whole
6 line of cases running from Blakely v. Washington, 542 U.S. 296
7 (2004), and United States v. Booker, 125 S.Ct. 738 (2005), through
8 most recently, Gall v. United States, 552 U.S. --, 2007 WL 4292116
9 (Dec. 10, 2007), and Kimbrough v. United States, 552 U.S. --, 2007
10 WL 4292040 (Dec. 10, 2007).  In the post-Booker climate, it is no
11 longer necessary to couch the request for a sentence below the
12 advisory guidelines in terms of being "extraordinary" or "outside
13 of the Heartland."  Rather, the formerly necessary exercise of
14 persuading a sentencing court that an individual defendant had met
15 stringent tests to qualify for a downward departure has been
16 replaced by the much less onerous standard of presenting evidence
17 to show that a mitigated sentence is reasonable and appropriate.
18    While again, the defendant takes no issue with the Probation
19 Officer's guideline computation which would yield a recommended
20 sentence of 14 years, Defendant believes that such a term would be
21 unduly onerous and "greater than necessary" to fulfill the
22 objectives of §3553(a).
23    Based on Mr. Roman's overall life and background as detailed
24 in the remainder of this memorandum and its attachments, Mr. Roman,
25 through counsel, respectfully requests that the Court exercise its
26 discretion under Booker and sentence him to a term of imprisonment
27 of not more than ten years.
28 ///

4

## II.

## DEFENDANT'S PERSONAL HISTORY AND BACKGROUND

## SUPPORTS THE REQUESTED SENTENCE OF TEN YEARS

Mr. Roman is extremely contrite and poses no further threat to society. His primary concern is that his family not be further harmed by his actions. He has already squandered the fruits of a lifetime of legitimate labor and has left his loved ones with little to build on. For this he is deeply ashamed and embarrassed.

For the purpose of offering insight into the "history and characteristics of the defendant" as set forth at 18 U.S.C. §3553(a), the following information is provided.

- *Personal Background*

Gabriel Dieblas Roman was born on December 27, 1961 in the village of Buena Vista in Sinaloa, Mexico. He is the seventh of thirteen children born to Susano Roman and Maria Agustina Nieblas. All fifteen members of his family lived off of food grown on communal land that they shared with other villagers. The bulk of the products the family raised were for their own daily consumption and a small surplus was sold at market to earn what little money the family used.

Mr. Roman attended school until the sixth grade when he left to work with his parents and siblings as a farm laborer. Since then, his life has been dedicated to hard work, first to contribute to his parents' and younger siblings' welfare, and later to support his own family. Three of the defendant's siblings now live in California and the rest still live in Mexico. Mr. Roman's father died three years ago in Buena Vista, Mexico, where his mother resides to this day. She suffers from diabetes and is supported in

5

large part by contributions sent from the United States by the defendant and one of his brothers.

- *Relocation to the United States/Marital and Family History*

Mr. Roman came to the United States in 1981 to search for better employment. He moved in with friends in Compton, California, a city in southern Los Angeles County, where he found work at a factory assembling wooden tables and chairs.

A few years after immigrating to California, Mr. Roman met Maria Luisa Arellano through mutual friends in Compton. Ms. Arellano was a thirty-five year old mother of five when the couple met, and seven years older than the defendant; nevertheless, they fell in love. They moved in together and Mr. Roman became an integral part of the household, helping to raise Ms. Arellano's five children from her first marriage. In a letter written to the Court (attached), the defendant's stepson Juan Rodriguez, now 39 years old, recalls:

> I met Gabriel when he started dating my mom (Maria Luisa Arellano) when I was about thirteen years old. My dad walked out on my mom about three years prior leaving her with five kids.... Gabriel always showed respect towards me and my brothers and sisters. He never laid a hand on my mom or us. Gabriel always worked hard and provided for us.
>
> In the beginning he worked at a factory and times were a little hard, but then he saved enough money and bought his first truck (18

6

> wheeler). Gabriel was always driven to do better for him and his family. Soon after he bought a lunch truck and had his brothers working it.... Gabriel was always trying to help everyone....
>
> After I graduated high school, Gabriel insisted that I go to college. I went to a junior college, [for] which Gabriel paid the tuition. After I received my AA degree I transferred to Cal State Long Beach, which Gabriel also paid for.

Before they finally married in 1998, Mr. Roman and Ms. Arellano had been together for fourteen years. They have four biological children -- Daisy, age 22, Gabriel Jr., age 17, Kevin, age 16, and Leslie, age 15 -- in addition to Ms. Arellano's five older children from her first marriage who became Gabriel's stepchildren. Daisy is now married and living on her own and her three younger siblings live with their mother in Hesperia, California, where the defendant and Ms. Arellano moved about ten years ago. Previously they had lived in Compton and Lynwood, California. Mr. Roman and Ms. Arellano have been separated since about 2005.

- *Employment History*

In the mid-1980's, Mr. Roman was injured on the job at the factory where he had been employed since his arrival in California. While recovering from his injury he began attending truck driving school and upon completion of a certification program in 1987 he

7

1  went to work as a truck driver.  His first position in trucking was
2  as a driver for Los Angeles based West Coast Fast Freight, where he
3  worked delivering cargo throughout the state of California.  He has
4  made his living primarily through trucking ever since.  For a time
5  he even had his own company, Gabriel Roman Trucking.  At its peak
6  Gabriel Roman Trucking had seven trucks on the road but the company
7  was dissolved when business slowed and he was forced to sell off
8  his trucks.
9      From 2004 until his arrest, Mr. Roman worked as a driver for
10 Vankim Express, a trucking company headquartered in Bloomington,
11 California.  Vankim Express supervisor Alfonso Garcia has known Mr.
12 Roman for about seven years.  In a letter to the Court (attached)
13 Mr. Garcia writes:
14         [Gabriel] worked for my company as a truck
15         driver and he was a hard worker, responsible
16         on all appointments.  He helped other drivers
17         when they asked for a favor and he is a social
18         person with everybody... he never had problems
19         with anyone.
20     In addition to truck driving, over the past twenty years Mr.
21 Roman has supplemented his income through a variety of second jobs
22 including operating a catering truck with his brothers in South Los
23 Angeles and a storefront seafood restaurant with one of his
24 stepsons in Hawaiian Gardens, California.
25 ///
26 ///
27 ///
28 ///

### III.

### **THE FACTORS SET FORTH IN 18 U.S.C. §3553(a) PERMIT AND ENCOURAGE A SENTENCE OUTSIDE THE ADVISORY GUIDELINES**

The overwhelming weight of authority following <u>United States v. Booker</u>, 125 S.Ct. 738 (2005), is that the guideline range is one of seven factors that the Court must consider but it carries no greater weight in the sentencing calculus than any of the other factors identified in §3553(a). Nowhere in the <u>Booker</u> decision does the Supreme Court indicate that sentences outside of the advisory guidelines are to be considered unusual. Nor does the Supreme Court indicate that the guidelines are entitled to any presumption of correctness. [See, e.g. <u>United States v. Ranum</u>, 353 F. Supp. 2d 984 (E. D. Wisc. 2005) in which the court held that "in every case, courts must now consider all of the §3553(a) factors, not just the guidelines"; see also <u>United States v. Moreland</u>, 366 F. Supp.2d 416, 418 (S.D.W. Va. April 27, 2005) ("Importantly, while I respect the advice of the Guidelines and give it serious consideration, I do not view that advice as carrying greater weight than any of the other §3553(a) factors. That is, I do not view the guideline range as being presumptively reasonable"); <u>United States v. Myers</u>, 353 F. Supp. 2d 1026 (S.D. Iowa 2005) ("To treat the Guidelines as presumptive is to concede the converse, i.e.; that any sentence imposed outside the Guideline range would be presumptively unreasonable in the absence of clearly identified reasons. If presumptive, the Guidelines would continue to overshadow the other factors listed in §3553(a), causing an imbalance in the application of the statute to the particular defendant by making the Guidelines, in effect, still mandatory.");

9

Simon v. United States, 361 F. Supp. 2d 35 (E.D.N.Y. 2005) ("I adopt the view that the Guidelines are advisory and entitled to the same weight accorded to each other factor that the Court is instructed to consider by §3553(a)."); and United States v. Biheiri, 356 F. Supp. 2d 589, 594 n.6 (E.D. Va. 2005) (No individual factor is singled out as having greater weight; instead, the richness of factual diversity in cases calls on sentencing judges to consider all of the factors and to accord each factor the weight it deserves under the circumstances. Thus, the Guidelines sentencing range is not entitled to "heavy weight...").

The relevant sentencing aims set forth in §3553(a)(2) are briefly examined below as they apply to the nature and circumstances of this particular offense and the history and characteristics of this defendant:

Retribution: A sentence of any period of Federal imprisonment followed by deportation to Mexico and lifetime banishment from the United States would represent very stern punishment for Mr. Roman -- even if the sentence is up to forty-eight months below the 168 month low-end guideline term recommended by the PSR. The defendant has lived all of his adult life in this country and all of his children were born here. As a consequence of the instant conviction, which is an aggravated felony for immigration purposes, Mr. Roman will be deported from the United States and will be ineligible to return. All of his children live in, and will probably remain in, the United States.

Accordingly, even if not technically defined as "punishment," the collateral consequence of Mr. Roman's deportation should be

considered.[2]  Whatever the length of his sentence, he and his family will continue to pay the price for his actions long after he is released from custody.  A longer term of custody would seem unnecessary and redundant for retributive purposes.

<u>Deterrence</u>: A prison sentence of 120 months for Mr. Roman, followed by forced repatriation to a poor and violence-ridden third world country, will send a message to the community that any involvement with illegal drugs will be dealt with sternly.  No reasonable person could dismiss a 10 year Federal prison term for Gabriel Roman as "getting off lightly."

<u>Incapacitation</u>: The letters of support received from Mr. Roman's family, friends, and a former employer indicate that he is respected and valued by his loved ones.  The letters also emphasize his history of honorable and legitimate hard work.  Mr. Roman is non-violent and has no criminal history points.  Inasmuch as he will be deported to Mexico upon release and prohibited from ever entering this country again, the community will be satisfactorily protected whether or not the time in prison is 10 years, or 14 years, or some figure in between.

<u>Rehabilitation</u>: Mr. Roman is contrite and deeply disappointed in himself.  He has ruined his own life and caused immeasurable harm to his family.  If he serves the mandatory minimum of ten

---

[2] Under these circumstances, deportation is "the equivalent of banishment or exile."  <u>Jordan v. DeGeorge</u>, 341 U.S. 223, 231 (1951).  As Justice Field observed long ago, "[I]f the banishment of an alien from another country...where he may have formed the most tender connections be not a punishment, and among the severest of punishments, it would be difficult to imagine a doom to which the name can be applied."  <u>Fong Yue Ting v. United States</u>, 149 U.S. 698, 749 (1893) (Field, J., dissenting) (<u>quoting</u> James Madison at 4 Elliot's deb 554, 555).

11

years, Mr. Roman will be in his mid-50's when released. A longer prison term would not promote greater rehabilitation but, conversely, could work at cross-purposes with Mr. Roman's need to rebound from his mistake and restart his life in Mexico while he still has the strength and vigor to seek and hold employment in a country where employment is difficult to find under the best of circumstances.

## IV.

## THE ADVISORY GUIDELINES SHOULD NOT
## LEAD TO AN OVERLY DISPARATE SENTENCE

The factors to be considered at 18 U.S.C. §3553(a) include "the need to avoid unwarranted sentencing disparities," (a)(6).

Though the original complaint of February 28, 2007 named Gabriel and Hildegardo Rivera as co-defendants in the instant matter, Mr. Roman is the sole defendant who will be going to prison. On or about October 7, 2006, Mr. Rivera was stopped by California Highway Patrol officers who found approximately $3 million in currency secured in the cabin of the tractor trailer he was driving. Mr. Rivera was later arrested and charged on February 28, 2007 and was named, with Mr. Roman, in both counts of the criminal complaint filed on that same date. Subsequently, all charges against Mr. Rivera were dismissed.

In early June of 2006, federal agents seized approximately $3.5 million dollars concealed in a tractor trailer detained in Keasbey, New Jersey. Four individuals were arrested in connection

12

with this seizure.[3] One of the four, Junior Rojas, pled guilty and has not yet been sentenced. The other three defendants implicated in this $3.5 million seizure received sentences of about five years after pleading guilty to money laundering.[4]

Mr. Roman understands and accepts that his culpability may warrant a longer sentence than Hildegardo Rivera and the others charged in connection with this conspiracy. What must be decided now is how much longer the sentence should be without creating "unwarranted sentencing disparity." A sentence of more than ten years, amounting to more than double the sentences received by all of those so far sentenced in connection with this case, seems difficult to reconcile with the interest of parity.

## V.

### LETTERS OF SUPPORT

The appended letters reflect a strong current of concern for Mr. Roman within his community. All of the letters are appended, with accompanying translations into English where necessary, and a few are excerpted below:

Juan Gutierrez, the defendant's son-in-law, writes:

> ...The impression I had and still have of Gabriel, is that he is a very hard worker has struggled for what he has accomplished in life. He has always pushed education on his

---

[3] PSR, Pg. 5, ¶12.

[4] Per telephone communication with the Assistant United States Attorney on February 12, 2008.

13

children, including Daisy.  She actually went back to school after she gave birth to our daughter, and received her GED/high school equivalency diploma, to not disappoint her dad.  He told her that he never had the opportunity at a decent education in Mexico, and therefore she should take advantage of the educational opportunities she was presented with in this country....

...It seems that Gabriel, when present in his children's lives, has had a positive influence on their behavior and education.  I believe that a long absence from his family would only hinder their situation, both financially and as a role model and disciplinarian to his kids....

Eva Rodriguez states in her letter:

...Gabriel was always there when we needed him.  One time I needed to go to the hospital because I have diabetes and Gabriel was there to take me.  In the time he lived with us for me he was a kine, respectful and very reserved person.  My grandchildren love him and missed him very much because they see him as a father....  He helped a lot in the house providing not only economically but also with moral support.

14

Veronica Lopez writes:

> ...The impact that has caused to my cousin and her children during all the court proceedings and the time he has spent in custody has been very hard. I have seen the pain and suffering that my cousin and her children go through. They see Gabriel as a father ever since their biological father abandoned them. Gabriel would not only financially provide for them but also give them the love and care that her children need from a father....

And the defendant's daughter, Daisy Roman, attests in her letter:

> ...It's obvious the father figure is missing in our family. Our father I believe is the only one that can restore order in our lives. He is our backbone, strength, our inspiration. Our dad was the one that gave us advice; he always knew the right things to say.... Ever since I can remember my dad has always been an honest, generous, kind, loving, respectful father.

## VI.

## THE RECENT UNITED STATES SUPREME COURT'S DECISION IN GALL AS WELL AS THE §3553(A) FACTORS SUPPORT THE REQUESTED SENTENCE

In Gall v. United States, 552 U.S. --, 2007 WL 4292116 (Dec. 10, 2007), in part to clarify confusion which existed among the

15

circuits, the Supreme Court has set forth a deferential abuse-of-discretion standard which affords district courts significant latitude in determining the appropriate sentence. The Court holds:

> We reject, however, an appellate rule that requires the "extraordinary" circumstances to justify a sentence outside the Guidelines range. We also reject the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justification required for a specific sentence.

In short, Gall's message is that the Guidelines truly are just advisory in arriving at an appropriate sentence. To deviate from the Guidelines the circumstances need not be "extraordinary"; rather, District Court judges now have a mandate to consider the totality of the circumstances involved in a case, and to craft their sentence accordingly.

In the case of Mr. Roman, this Court is asked to take a good look at the man himself. The many character references reveal him to be a kind individual who, for the past two decades, has invariably "walked that extra mile" to help those in need.

The fact that Mr. Roman is a decent and helpful person does not, of course, make up for the fact that he has broken the law by participating in a drug conspiracy. He has accepted responsibility for his actions and deeply regrets his mistakes.

In Kimbrough v. United States, 552 U.S. --, 2007 WL 4292040 (Dec. 10, 2007), Justice Ginsburg, writing for the majority, specifically refers to "§3553(a)'s overarching instruction to

16

1  'impose a sentence sufficient, but not greater than necessary' to
2  accomplish the sentencing goals advanced in §3553(a)(2)."
3  　　　In this instance, the requested sentence of 120 months
4  imprisonment would seem sufficient to meet the above criteria.
5  Such a sentence, while extremely punitive, would spare this
6  defendant and his family a prison term so lengthy that there would
7  be nothing left of his life on the back end.
8
9  　　　　　　　　　　　　　　　　**VII.**
10 　　　　　　　　　　　　　　**CONCLUSION**
11 　　　For the reasons set forth in this memorandum, Defendant
12 Gabriel Roman, through counsel, respectfully requests that the
13 Court sentence him to the 10-year mandatory minimum term of
14 incarceration. In imposing such a sentence, the defendant requests
15 that the Court consider the numerous mitigating factors present in
16 this case, including his employment history; his contrition and
17 readiness to take responsibility; and the humanitarian needs of his
18 children who will suffer the extremely harsh collateral punishment
19 of having their father, breadwinner, and emotional mainstay
20 separated from them, due first to imprisonment and then to
21 permanent deportation.
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

17

A sentence of ten years prison, to be followed by permanent exclusion from the United States, would be "sufficient, but not greater than necessary," to punish, deter, correct and rehabilitate, in fulfillment of the purposes of sentencing articulated at 18 U.S.C. §3553(a).

Date: February 13, 2008          Respectfully submitted,


                                       _____/s/_____
                                       DAVID A. ELDEN
                                       Attorney for Defendant
                                       GABRIEL DIEBLAS ROMAN